STATE of Minnesota, Appellant,

v.

Dawn Marie MEREDYK, Respondent.

No. A07–1150.

Court of Appeals of Minnesota.

Aug. 12, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for appellant.

Dawn Marie Meredyk, Newport, MN, pro se respondent.

Considered and decided by HALBROOKS, Presiding Judge; WILLIS, Judge; and JOHNSON, Judge.

## OPINION

HALBROOKS, Judge.

Respondent was charged with multiple counts of felony theft for her part in a long-running swindle. She entered into a plea agreement with the state, part of which required her to pay substantial restitution to her victims. The district court accepted respondent's guilty plea and sentenced her in accordance with the terms of the agreement. The state now challenges the district court's subsequent modification of respondent's restitution obligation, contending that the district court had no authority to modify respondent's sentence with regard to restitution. In the alternative, the state argues that, even if the district court had the authority to modify respondent's restitution, it abused its authority in doing so here. We conclude that while a district court has authority to modify the terms of a restitution obligation under Minn. R.Crim. P. 27.03, its modification on this record was an abuse of discretion. We therefore reverse.

## FACTS

Beginning in the late 1990s, respondent engaged in an elaborate scheme in which she stole hundreds of thousands of dollars from her grandparents, J.S. and R.S., who were 86 years old at the time appellant was charged, and her great-uncle, H.J., who was 83, by making repeated claims to them that she required substantial sums of money to pay court fees, attorney bills, fines, and other costs related to unspecified legal problems that she had. Respondent's claims to be in legal trouble were fabricated. But in order to convince her grandparents and great-uncle of the veracity of her claims over a six-year period, respondent forged the signatures of 16 different judges of this state on more than 200 falsified legal documents and enlisted the assistance of another person who impersonated a court clerk. These falsified documents corroborated respondent's claims about her legal problems and her ongoing need for money to resolve them. Respondent told her grandparents and great-uncle that she would repay them in full once she received a large settlement. This claim too was fictional. After respondent depleted her victims' savings accounts through this scheme, she swindled them out of their pension and social-security checks.

Eventually other family members became suspicious of respondent's actions and contacted authorities. An investigation ensued, and in May 2005, respondent was charged with nine counts of felony theft by swindle and one count of felony aggravated forgery for stealing approximately $400,000 from her grandparents and great-uncle. The district court was initially reluctant to accept the guilty plea and negotiated agreement because the district court felt that respondent should serve time in prison. As a result, the district court rejected the plea agreement at the first sentencing hearing but set it

for an additional hearing one week later. At the second sentencing hearing, the district court accepted the negotiated plea agreement, staying execution of respondent's 42–month prison sentence, placing her on probation for 15 years, and requiring her to pay $400,000 in restitution to her victims as a condition of probation. Another condition of respondent's probation was that she accept no gifts, financial assistance, or other payment from any of her victims. Two years later, respondent had paid less than $200 in restitution to each victim.

In spite of the substantial harm that they have suffered, respondent's victims have continually shown her great sympathy. They have repeatedly indicated that they view respondent as a valued member of the family and want only the best for her. Even after other family members raised strong concerns about respondent's conduct, J.S., R.S., and H.J. stated that they did not want to involve the authorities and refused to assist in the criminal investigation once it was under way.

Consistent with these attitudes, on April 4, 2007, respondent's victims brought a motion to discharge the remaining balance of her restitution obligation, which was then more than $399,000. The district court held a hearing on the motion on April 16, 2007; neither respondent nor her attorney was present. Respondent's grandparents were present and represented by counsel, but respondent's great-uncle was not present because he was hospitalized. The state objected to the hearing on the ground that there was no statutory authority allowing victims to challenge restitution.

Respondent's grandfather testified that he wanted the remainder of respondent's restitution obligation to be eliminated be-cause he did not need or want the money and did not "want to leave a big debt" for respondent. He stated that ·the matter had "been bothering us [for] quite a while" and that he just wanted it "taken care of so that we can rest in peace." Respondent's grandmother testified that the restitution "doesn't serve any purpose as far as we're concerned, and it's destroying [respondent], not giving her a chance to go on with her life." She went on to state that "money ... has no value. And that's why we want to give [respondent] a chance to be able to make a life for herself." A close friend of respondent's grandparents testified that the couple was fully competent to make this decision and that "this is what they want with all their heart."

In a subsequent order, the district court modified respondent's restitution obligation by adding a new condition concerning how the obligation could be satisfied. The order directed "[t]he Department of Corrections ... to file an order judgment against [respondent] and thereafter to continue to collect restitution until ... [respondent] makes full restitution" *or* until a "satisfaction of [the] judgment is filed" by all three of respondent's victims. The district court stated that this new condition "enable[d] the victims to determine whether or not the full amount of [the] restitution has been" met because if they file documentation stating that respondent has satisfied the judgment "this will end [respondent's] restitution obligations" under the terms of the obligation as modified. In other words, the modified restitution allows respondent to satisfy the restitution obligation without paying the full amount to which she agreed as part of her plea agreement with the state. The remaining terms of respondent's sentence were not altered. This appeal by the state follows.[1]

---

1. While the state fully briefed the issues pres- ently before us, no brief was filed by respon-

## ISSUE

Did the district court abuse its discretion by modifying, over the state's objection and at the request of the victims, the terms of a restitution obligation that was imposed as part of a negotiated plea agreement?

## ANALYSIS

### I.

■ The state argues that the district court did not have jurisdiction or statutory authority to modify the terms of respondent's restitution obligation under the circumstances. "Issues involving the authority and jurisdiction of the district court are legal issues, which we review de novo." *State v. Jones,* 678 N.W.2d 1, 23 (Minn. 2004). While the imposition of a sentence within the prescribed limits is a judicial function, *State v. Olson,* 325 N.W.2d 13, 18 (Minn.1982), "in the absence of statutory authorization, a [district] court has no sentencing power." *Miller v. State,* 714 N.W.2d 745, 747 (Minn.App.2006) (quotation omitted). Thus, a district court has no inherent authority to impose terms or conditions of a criminal sentence; this power is vested solely with the legislature. *State v. Pflepsen,* 590 N.W.2d 759, 764 (Minn.1999). Similarly, a district court has no inherent authority to modify previously imposed terms or conditions of a criminal sentence; such power is also vested with the legislature. *See id.* at 765 (stating that modification of a restitution obligation after a defendant's probationary period has expired is not permitted because no statute or rule authorizes such a modification). "Therefore, in analyzing the legitimacy of [a] . . . restitution order, [appellate courts] first must look to the

legislature's mandate with respect to restitution." *Id.* at 764.

■ Minnesota Statutes chapter 611A discusses, among other things, certain rights and remedies afforded victims of crime. One of these rights is "the right to receive restitution as part of the disposition of a criminal charge." Minn.Stat. § 611A.04, subd. 1(a) (2006). Accordingly, the district court is expressly authorized to order restitution when imposing a sentence after conviction of a misdemeanor, gross misdemeanor, or felony. Minn.Stat. §§ 609.10, subd. 1(5), 609.125, subd. 1(4) (2006). A district court is also authorized to impose restitution when it stays imposition or execution of a defendant's sentence. Minn.Stat. § 609.135, subd. 1 (2006). But these statutes are silent with respect to a district court's authority to modify previously imposed restitution and, therefore, provide no authority to engage in such modifications. *See State v. Johnson,* 743 N.W.2d 622, 626 (Minn.App.2008) (stating that "this court cannot add to a statute what the legislature purposely omits or inadvertently overlooks" (quotation omitted)).

■ In arguing that the district court had no authority to modify the imposed restitution here, the state relies on Minn. Stat. § 611A.04, subd. 1(b) (2006). This statute gives the district court the authority to

amend or issue an order of restitution after the sentencing or dispositional hearing if:

(1) the offender is on probation, committed to the commissioner of corrections, or on supervised release;

---

dent. Nevertheless, we will decide this appeal on its merits. *See* Minn. R. Civ.App. P. 142.03 ("If the respondent fails or neglects to serve and file its brief, the case shall be deter-

mined on the merits."); Minn. R.Crim. P. 28.01, subd. 2 (stating that, unless expressly provided otherwise, the rules of civil appellate procedure govern criminal appeals).

(2) sufficient evidence of a right to restitution has been submitted; and

(3) the true extent of the victim's loss or the loss of the Crime Victims Reparations Board was not known at the time of the sentencing or dispositional hearing, or hearing on the restitution request.

Minn.Stat. § 611A.04, subd. 1(b).

The state concedes that the first two elements under this section are met, but contends that the third element cannot be met because the extent of the victims' losses were clearly established at the time of respondent's sentencing by her own admissions that she stole approximately $400,000 and by her express agreement as part of the plea agreement that the amount of the loss for which she must pay restitution is $400,000. We agree. Because the third element of Minn.Stat. § 611A.04, subd. 1(b), is not satisfied, the district court did not have the authority under this section to modify respondent's ordered restitution.

■ The state goes on to argue that because Minn.Stat. § 611A.04, subd. 1(b), expressly addresses restitution modification and the statute's requirements are not met, the district court had no authority to modify restitution. But this argument imposes an exclusivity on subdivision 1(b) that its plain language does not support. The statute contains no restrictive language prohibiting modification of restitution in other circumstances. Therefore, the state's attempt to read such exclusivity into the statute in the face of silence is not proper. *See Johnson,* 743 N.W.2d at 626.

Minn. R.Crim. P. 27.03, subd. 9, also addresses a district court's ability to modi-

fy certain types of sentences and provides independent authority to district courts to undertake the modifications authorized in the rule. *See Pflepsen,* 590 N.W.2d at 765 (noting how, in addition to the sentencing authority provided by certain statutes, "[t]he Rules of Criminal Procedure likewise grant courts authority" to modify the types of sentences discussed in rule 27.03, subd. 9).

Minn. R.Crim. P. 27.03, subd. 9, authorizes a district court to "at any time correct a sentence not authorized by law" or to "at any time modify a sentence during either a stay of imposition or stay of execution of sentence except that the court may not increase the period of confinement." This court has interpreted Minn. R.Crim. P. 27.03, subd. 9, as providing an accompanying grant of jurisdiction to a district court to perform the actions authorized by the rule. *See State v. Cook,* 617 N.W.2d 417, 418–19 (Minn.App.2000) (citing Minn. R.Crim. P. 27.03, subd. 9, for the proposition that a "district court has jurisdiction at any time to correct a sentence that is not authorized by law").

■ Respondent's sentence falls within Minn. R.Crim. P. 27.03, subd. 9, because the district court stayed the execution of the imposed prison time for 15 years and modified the restitution aspect of respondent's sentence less than two years later. Thus, while the district court had no authority to modify respondent's restitution obligation under Minn.Stat. § 611A.04 (2006), it did have the authority to modify respondent's sentence under the Minnesota Rules of Criminal Procedure because it did so during a stay of execution.[2]

---

2. In so holding, we do not mean to, in any way, modify or affect other statutory or case law governing or limiting an offender's ability to request modification of his or her sentence, including in regards to restitution. For ex-

ample, Minn.Stat. § 611A.045, subd. 3(b) (2006) provides that an offender has 30 days to challenge a restitution obligation. We have strictly applied this time limit and barred challenges brought after 30 days. *Ma-*

## II.

 The state argues that the district court erred in modifying the terms of respondent's restitution obligation over its objection because the restitution was imposed as part of a negotiated plea agreement. A district court has broad discretion concerning matters of restitution as long as a sufficient factual basis underlies its decision regarding the ordered restitution. *State v. Thole,* 614 N.W.2d 231, 234 (Minn.App.2000). A district court's restitution order will not be reversed unless it abuses this discretion. *State v. Tenerelli,* 598 N.W.2d 668, 672 (Minn.1999). The state raises several reasons that it contends render the particular terms of the district court's modification an abuse of discretion.

 First, the state argues that the district court impermissibly delegated its sentencing power to respondent's crime victims by allowing them to determine whether or not she has satisfied the restitution obligation. The principle that the state refers to prohibits a district court's delegation of its authority to *impose* sentences—which includes imposition of terms and conditions of probation—because this is "exclusively a judicial function." *State v. Ornelas,* 675 N.W.2d 74, 80 (Minn.2004) (quotation omitted). Respondent's restitution obligation was a condition of her probation and thus nondelegable. But it is both permissible and desirable to allow flexibility in implementing and administering the conditions that a district court imposes when sentencing a defendant, including conditions of probation. *See State v. Henderson,* 527 N.W.2d 827, 829 (Minn.

1995) (distinguishing between imposition and administration of a sentence and stating that "trial judges should not be burdened with administrative issues relating to the implementation of conditions of probation" imposed as part of a sentence).

Here, the district court's modification allows respondent to satisfy her restitution payment by either full payment of the $400,000, to be collected by the Minnesota Department of Corrections (DOC), or by her victims' act of filing a satisfaction of judgment. In imposing this condition, the district court delegated no authority to the DOC; the DOC is only implementing the district court's order by collecting the restitution until it is fully paid or until a satisfaction of judgment is filed. Similarly, the district court did not delegate any sentencing authority to respondent's victims. The modification affects them only in that if they file a satisfaction of judgment, respondent's restitution obligation is satisfied. But it is the district court that imposed this particular condition, not the victims. It is not uncommon for third-party assertions to be used by a district court in determining whether a defendant has met a condition of his or her sentence (e.g., a substance-abuse counselor asserting that a defendant convicted of driving while impaired has successfully completed an alcohol-abuse program imposed as a condition of the defendant's sentence). Accordingly, this particular argument is without merit.

But we are concerned about the fact that the restitution obligation that the district court modified was based on a negotiated plea agreement.[3] Under the plea

son v. State, 652 N.W.2d 269 (Minn.App. 2002), *review denied* (Minn. Dec. 30, 2002). A district court's authority under rule 27.03, subdivision 9, to modify a particular aspect of an offender's sentence does not also mean

that an offender has the ability to request a modification.

3. Accordingly, this is not a case in which there was no agreement as to restitution and the district court independently imposed and

agreement, the state agreed not to recommend executed prison time in return for respondent agreeing, among other things, to pay $400,000 in restitution. Given the victims' attitudes toward respondent's continued payment of restitution, under the district court's modified order, respondent will almost assuredly never pay the amount she agreed to pay and that the state relied on when making the concessions contained in the original plea agreement.

The facts here present the unique situation in which the disputed modification of a restitution obligation concerns the obligation's potential cancellation. This is in contrast to past cases in which the dispute went to a district court's later imposition of a restitution obligation when none initially existed or to a subsequent increase in the amount of the obligation. *See, e.g., State v. Chapman,* 362 N.W.2d 401, 404 (Minn.App.1985) (challenge to imposition of a restitution amount significantly higher than that which was contemplated as part of the plea agreement); *State v. Raddatz,* 345 N.W.2d 798 (Minn.App.1984) (challenge to imposition of a restitution obligation when, as part of a plea agreement, the parties agreed that defendant would be sentenced to executed prison time but there was no agreement as to probation or restitution). In short, this appeal presents an issue of first impression, with our research revealing no case law directly on point. Thus, we begin by examining the general principles informing the nature of plea agreements.

 While the law relating to contracts cannot be blindly applied to plea agreements, such agreements are in many ways analogous to a contract between the state and a defendant. "The essence of

plea agreements . . . is that they represent a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters." *United States v. Porter,* 405 F.3d 1136, 1145 (10th Cir.2005). An unqualified promise made as part of a plea agreement must be honored. *Kochevar v. State,* 281 N.W.2d 680, 687 (Minn. 1979). Accordingly, we have stated that a plea agreement expressly omitting restitution "will severely limit" a district court's otherwise broad discretion to impose such an obligation. *See State v. Anderson,* 520 N.W.2d 184, 187 (Minn.App.1994) (quotation omitted). Similarly, we believe that when a plea agreement expressly calls for a specific amount of restitution and the district court accepts the agreement, this also severely limits the district court's discretion to subsequently alter the negotiated amount of the restitution.

Plea agreements can be intricate, and alteration of one condition may alter the nature of the entire agreement. *See State v. Misquadace,* 629 N.W.2d 487, 491 (Minn.App.2001) (after finding the appellant's sentence improper, reversing for resentencing instead of altering the imposed sentence because "[t]his was an intricate plea agreement involving many crimes. . . . Everything was interrelated and it would be inappropriate for this court to make piecemeal corrections without regard to the effect of the corrections on the plea bargain."), *aff'd,* 644 N.W.2d 65 (Minn. 2002).

 The modification here was significant, and the condition modified was not merely an ancillary aspect of the plea

then subsequently modified a restitution obligation. Those facts present a very different question, and we express no opinion about

the propriety of the modification of a restitution obligation in that context.

agreement. In modifying respondent's restitution obligation in the manner that it did, the district court drastically altered the parties' bargained-for exchange without the consent of respondent and over the state's express objections. This is contrary to our case law, which indicates that a district court generally should not alter the terms of a restitution obligation negotiated as part of a plea agreement if it materially changes the expectations of the parties to the bargain. *See Chapman,* 362 N.W.2d at 404 (concluding that imposition of a restitution amount that was approximately $31,000 greater than that which was contemplated as part of the plea agreement "materially alter[s] the expectations of the parties to the bargain" and allows for withdrawal of the plea (quotation omitted)); *State v. Noreen,* 354 N.W.2d 77, 78–79 (Minn.App.1984) (stating that imposition of a restitution obligation of $2,000 materially altered the expectations of the parties, allowing for withdrawal of a guilty plea). Given the sheer magnitude of the alteration to respondent's restitution obligation and the fact that restitution went to the very foundation of the entire plea agreement, the district court's modification materially altered the bargained-for exchange underlying the parties' assent to the agreement.

Respondent was not present at the modification hearing, but the state vigorously opposed the modification. And it is unlikely that the state would have agreed to the terms of the plea agreement absent respondent's agreement to pay the substantial amount of restitution. By ordering the modification, the district court in effect forced the state to incorporate terms into the plea agreement to which it never consented and with which it does not agree. A district court must accept or reject a plea agreement on the terms as presented to the district court, Minn. R.Crim. P. 15.04, subd. 3, and cannot usurp the position of counsel by negotiating or determining the content of the agreement itself.[4] *See State v. Johnson,* 279 Minn. 209, 216, 156 N.W.2d 218, 223 (1968) (stating that "the court should neither usurp the responsibility of counsel nor participate in the plea bargaining negotiation itself"). Yet the district court's modification of a specifically negotiated term of respondent's plea agreement effectively did just that.

Furthermore, Minnesota law expressly addresses how uncollected restitution payments should be processed. If a crime victim, for whatever reason, does not claim his or her restitution payments required to be made by an offender, the payments are to be deposited in a designated crime-victims account maintained as part of the state treasury and paid out annually in the form of reparations to other crime victims. Minn.Stat. §§ 611A.04, subd. 5, 611A.612 (2006). This statutory scheme is, if not directly contravened, certainly undermined, by the district court's order. *See generally State v. Mix,* 646 N.W.2d 247, 250 (Minn.App.2002) ("A court abuses its discretion when it acts ... in contravention of the law."), *review denied* (Minn. Aug. 20, 2002). Respondent's obligation as modified will in all likelihood deprive other crime victims of the opportunity to be compensated for their financial losses because she will pay only a miniscule amount of the restitution ordered in her original sentence.

We also note that important policy concerns are raised by allowing unfettered modification of sentence conditions based on plea agreements. The vast majority of

---

**4.** A district court is, of course, free to determine aspects of a defendant's sentence not covered in the plea agreement or those that are left to its discretion.

criminal cases in Minnesota are resolved without trial. *State v. Lussier*, 695 N.W.2d 651, 655 (Minn.App.2005) (stating "approximately 97 percent of criminal proceedings in Minnesota are resolved without trial"), *review denied* (Minn. July 19, 2005). As any criminal law practitioner knows, plea bargains are a substantial reason underlying this fact and constitute an invaluable tool for county attorneys and local prosecutors. But a county attorney or prosecutor who knows that the district court could simply accept the plea agreement and then subsequently alter the sentence imposed as part of the agreement has a disincentive to negotiate an agreement in the first place. The parties to a plea agreement need to be reasonably confident that the conditions that they negotiate are the ones that each side will receive. Unless there are some minimal limits on a district court's discretion to subsequently alter sentence conditions premised on plea agreements, this will not be the case.

We are not unsympathetic to the victims' genuine desire that the remainder of respondent's restitution obligation be discharged. The district court's responsiveness to these concerns is certainly admirable, and if it were the only consideration, it would be difficult to argue that the district court acted improperly. But there are other factors that must be considered in evaluating the propriety of the ordered modification. Consideration of these factors leads us to conclude that the district court abused its discretion in modifying the terms of respondent's restitution that was part of a negotiated plea agreement when the state objected to the modification.

## DECISION

Respondent's restitution obligation of $400,000 was imposed as part of a sentence premised on a negotiated plea agreement with the state. The state opposed modification of the terms of this plea-based obligation. We therefore conclude that the district court abused its discretion in modifying respondent's restitution to permit its discharge without full payment as required in the original sentence.

**Reversed.**

JOHNSON, Judge, (concurring specially).

I concur in the judgment. I respectfully disagree with part I of the opinion of the court, which concludes that the district court had authority to consider the motion that gave rise to this appeal. In my view, it is important to address and to decide significant and fundamental issues raised by the state that are not addressed in the opinion of the court but, rather, are assumed to support the district court's authority to hear the motion.

There is no provision in rule 27.03, subdivision 9, of the Minnesota Rules of Criminal Procedure for a victim of a crime to bring a motion under the second sentence of that rule. (The first sentence of the rule does not apply here because there is no contention that the restitution obligation was "not authorized by law." *See State v. Humes*, 581 N.W.2d 317, 319–20 (Minn.1998); *State v. Borrego*, 661 N.W.2d 663, 666 (Minn.App.2003).) In addition, there appears to be no caselaw allowing a victim of a crime to bring such a motion. The legislature provided means by which crime victims may participate in criminal proceedings, and those provisions are contained in chapter 611A of the Minnesota Statutes. Among them is a mechanism by which an order for restitution may be amended after a sentencing hearing, Minn. Stat. § 611A.04, subd. 1(b), but this court properly has concluded that the conditions of that statute are not satisfied. In my view, a district court's consideration of a

motion by a crime victim pursuant to the rules of criminal procedure is inconsistent with the legislative policy decisions that are reflected in chapter 611A.

Furthermore, the district court's decision is inconsistent with chapter 611A's provision for the disposition of unclaimed restitution payments. "Restitution payments held by the court for a victim that remain unclaimed by the victim for more than three years *shall be* deposited in the crime victims account created in section 611A.612." Minn.Stat. § 611A.04, subd. 5 (emphasis added). The plain language of this statute provides that if the victims of a particular crime do not wish to receive restitution payments, the money must be used to benefit the victims of other crimes. This legislative policy decision should preclude a district court's consideration of a request to reduce a restitution obligation because the victim of an offense has disclaimed an interest in the funds.

For these reasons, I join in the court's decision to reverse the district court's elimination of Meredyk's restitution obligation.