*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0822**

State of Minnesota,
Respondent,

vs.

Brittany Ann Vacko,
Appellant.

**Filed April 4, 2016
Remanded
Hooten, Judge**

Isanti County District Court
File No. 30-CR-13-833

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Jeffrey R. Edblad, Isanti County Attorney, Cambridge, Minnesota; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

    Considered and decided by Rodenberg, Presiding Judge; Larkin, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges her conviction of felony theft by swindle, arguing that she is entitled to withdraw her guilty plea because the district court did not honor the terms of her plea agreement.  We remand.

**FACTS**

On May 20, 2013, N.C. posted an advertisement on Craigslist offering her 2000 Buick Century for sale with an asking price of $2,000.  That same evening, appellant Brittany Ann Vacko and her husband went to N.C.'s home to look at the car.  While Vacko was test driving the car, N.C. notified Vacko's husband of the following problems with the vehicle: the check engine light was on; the oxygen sensor needed to be replaced; the odometer was unable to be read because the dash light was out, but N.C.'s best estimate was that the car had 123,000 miles on it; and the transmission needed to be replaced.  After negotiating a price of $1,350, Vacko and her husband purchased the vehicle.

On May 28, 2013, C.R. saw an advertisement on Craigslist for a 2000 Buick Century.  The ad indicated that the vehicle had 61,000 miles on it and that it was in "great" running and driving condition.  The ad listed a price of $3,750.  C.R.'s minor son, D.H., was interested in purchasing the vehicle, so C.R. called the number listed on the ad.  The man who answered the call told C.R. that he was selling the car for his sister.  The man told C.R. that he would meet her at a gas station for a test drive.  D.H. and his father went to the gas station, where they met Vacko.  D.H. and his father test drove the car and

2

negotiated a purchase price of $3,600. Vacko provided them with a bill of sale, identifying herself as N.C.

Within one day, the vehicle developed transmission problems, so D.H. and his father took it to a mechanic. The mechanic discovered that the vehicle had serious issues; the check engine light had been disabled; and the odometer had been tampered with and likely turned back.

C.R. contacted the real N.C. and learned that N.C. had actually sold the car to Vacko and her husband. C.R. and D.H. searched the internet and located a picture of Vacko. From the picture, D.H. identified Vacko as the woman who sold him the vehicle.

Vacko was charged with one count of felony theft by swindle, and she entered into a plea agreement with the state. The plea agreement called for a stay of imposition of sentence, a cap of 60 days on jail time to be argued at sentencing, no contact with the victims, and restitution in the amount of $3,600. Vacko pleaded guilty by way of an *Alford* plea to the charge of theft by swindle.

At the original sentencing hearing, Vacko moved to withdraw her guilty plea. The district court took the matter under advisement. At the conclusion of the hearing, the state notified the district court that "the victim in this matter is once again present. Had to take off time from work, a busy schedule, etc., to be here." The district court responded that it would "reserve issues of fees related to that" and requested an affidavit with respect to those costs. C.R. filed an affidavit requesting $100.35 in restitution for mileage and lost wages in connection with her attendance at the sentencing hearing. The district court subsequently denied Vacko's motion to withdraw her plea.

3

At the next sentencing hearing, the district court stated that it was "going to follow the plea agreement." The district court stayed imposition of sentence, placed Vacko on probation for five years, and imposed 60 days of jail. But, the district court ordered Vacko to pay $3,700.35 in restitution, an amount $100.35 greater than the $3,600 that Vacko agreed to in her plea agreement. This appeal follows.

## D E C I S I O N

"A defendant has no absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). A court must allow a defendant to withdraw her guilty plea if withdrawal is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice occurs when a guilty plea is not valid. *Raleigh*, 778 N.W.2d at 94. A guilty plea is valid when it is accurate, voluntary, and intelligent. *Id.* "Assessing the validity of a plea presents a question of law that we review de novo." *Id.*

Vacko argues that her plea was involuntary because she was induced to plead guilty by an unfulfilled promise that she would have to pay only $3,600 in restitution and that she is therefore entitled to withdraw her plea. The state argues that Vacko has waived any right to challenge restitution because she did not object to the added restitution of $100.35 at her sentencing hearing. The state is correct that Vacko did not object to the added restitution at her sentencing hearing or otherwise raise this issue before the district court. But, because plea withdrawal under the manifest injustice standard set forth in Minn. R. Crim. P. 15.05, subd. 1, is subject to de novo review, a defendant is permitted to challenge the validity of a guilty plea on direct appeal without having raised such challenge in district court, provided that the validity of the guilty plea may be determined from the record on

4

appeal. *See State v. Anyanwu*, 681 N.W.2d 411, 413 (Minn. App. 2004) ("[A] defendant has a right to challenge his guilty plea on direct appeal even though he has not moved to withdraw the guilty plea in the district court."); *State v. Newcombe*, 412 N.W.2d 427, 430 (Minn. App. 1987) (indicating that a defendant is not permitted to challenge guilty plea on direct appeal "only where the grounds for the challenge go outside the record on appeal"), *review denied* (Minn. Nov. 13, 1987). Because Vacko timely appealed from her sentence and because we need not go outside the record to discuss her argument, this issue is properly before us.

A district court generally has broad discretion when ordering restitution. *State v. Anderson,* 520 N.W.2d 184, 187 (Minn. App. 1994). But, "[a] plea bargain will 'severely' limit that discretion." *Id.* (quoting *United States v. Runck*, 601 F.2d 968, 970 (8th Cir. 1979)). "When a plea is entered and the defendant questioned, the [district] court judge must reject or accept the plea of guilty on the terms of the plea agreement." Minn. R. Crim. P. 15.04, subd. 3(1). When a guilty plea is induced by an unfulfilled promise, "the voluntariness of the plea is drawn into question, and due process considerations require that the defendant be given the opportunity to withdraw his plea." *State v. Wukawitz*, 662 N.W.2d 517, 526 (Minn. 2003) (citation omitted).

A plea agreement is "analogous to a contract between the state and a defendant." *State v. Meredyk*, 754 N.W.2d 596, 603 (Minn. App. 2008). Plea agreements essentially "represent a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters." *Id.* (quotation omitted). "[A]

5

district court generally should not alter the terms of a restitution obligation negotiated as part of a plea agreement if it materially changes the expectations of the parties to the bargain." *Id.* at 604. We must therefore decide whether the additional $100.35 of restitution materially altered Vacko's expectations to the plea agreement.

In *Runck*, the defendant committed insurance fraud to collect fraudulent gains totaling more than $100,000. 601 F.2d at 969. Runck pleaded guilty pursuant to a plea agreement, but the agreement did not include an amount of restitution. *Id.* The sentencing court ordered Runck to pay restitution as directed by the probation office. *Id.* The Eighth Circuit reversed and remanded, concluding that:

> While the condition of restitution of a small amount might be acceptable because it would not necessarily materially alter the expectations of the parties to the bargain, restitution of a large amount should have been part of the plea bargain or the possibility of its inclusion as a condition of probation made known and agreed to by the bargainers.

*Id.* at 970.

In *State v. Chapman*, the plea agreement similarly did not mention restitution. 362 N.W.2d 401, 403 (Minn. App. 1985), *review denied* (Minn. May 1, 1985). The agreement called for Chapman to plead guilty to two counts in exchange for the prosecutor's promise to dismiss the remaining six counts. *Id.* The two counts to which Chapman pleaded guilty were embezzlement and theft of funds totaling $15,747.97. *Id.* at 402. The district court ordered Chapman to pay restitution in the amount of $47,656.95, the full amount of losses from all the crimes originally charged against her. *Id.* This court concluded that "[t]he difference in this case between the restitution ordered and that proposed by Chapman, a

6

difference of approximately $31,000, is substantial." *Id.* at 404. Although some amount of restitution was contemplated by the parties, the *Chapman* court did "not believe that a plea agreement, voluntarily and intelligently entered into, should include such a gamble on the amount of restitution. The better practice would have been for the parties to enter on the record their understanding of the plea agreement's effect on restitution." *Id.* The court therefore concluded that "[t]he restitution ordered was beyond the terms of the plea agreement" and reversed and remanded. *Id.*

In *State v. Anderson*, the defendant was ordered to pay $10,227.12 in restitution when restitution had not been contemplated during plea negotiations. 507 N.W.2d 245, 246 (Minn. App. 1993), *review denied* (Minn. Dec. 22, 1993). This court affirmed, noting that the record suggested that the defendant "should have been aware that the victim might seek and the court might order restitution." *Id.* at 247.

In *State v. Noreen*, the district court ordered the defendant to pay $2,000 in restitution when restitution was not contemplated by the plea agreement. 354 N.W.2d 77, 78 (Minn. App. 1984). This court remanded for resentencing, concluding that the amount of restitution should have been included in the plea agreement. *Id.*

Here, the amount of additional restitution may pale in comparison to the amounts of restitution at issue in *Runck*, *Chapman*, *Anderson*, and *Noreen*. But, this case is distinguishable because Vacko's plea agreement called for a specific amount of restitution, whereas the plea agreements in those cases did not specify an amount of restitution. The fact that Vacko's plea agreement explicitly stated that restitution would be $3,600 shows that this amount of restitution was a material term of the agreement, and the district court

7

breached that term by ordering $3,700.35 in restitution. The district court must accept or reject a defendant's guilty plea "on the terms of the plea agreement," Minn. R. Crim. P. 15.04, subd. 3(1), and the state cites no case where we have upheld an increase in restitution when an exact amount of restitution was explicitly stated in the plea agreement.

Vacko also established at her sentencing hearing that she had limited financial resources when she told the district court that she relies on public assistance for her minimal income. The district court acknowledged that it was aware of Vacko's limited finances, declaring that it was not imposing a fine because of "financial circumstances" and because the court wanted Vacko's focus to be on paying restitution. Furthermore, both the state and Vacko note that, nine months after she was ordered to pay restitution, Vacko had paid only $30 toward her obligation. At that rate, it would take Vacko more than two years to satisfy an additional $100.35 in restitution. Because of Vacko's limited finances, the amount of restitution was a material term of her plea agreement. Although the $100.35 may have been a legitimate claim for restitution, it was not an amount that Vacko agreed to pay as part of her plea agreement. The additional $100.35 in restitution was a substantial amount for Vacko, and it therefore materially altered her expectations to the plea agreement.

We conclude that the district court's order imposing restitution in an amount $100.35 greater than what the plea agreement called for constituted a material breach of the plea agreement. "On demonstration that a plea agreement has been breached, the court may allow withdrawal of the plea, order specific performance, or alter the sentence if appropriate." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). We remand for the

8

district court to determine, in the first instance, the appropriate remedy for the breach of Vacko's plea agreement. On remand, the district court must allow Vacko to withdraw her guilty plea or sentence her according to the original terms of her plea agreement. Because our decision on this issue is dispositive, we need not address the other arguments that Vacko has raised in this appeal.

**Remanded.**