*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1642**

Fidele Ndaruhutse, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed May 13, 2024**
**Affirmed**
**Frisch, Judge**

Clay County District Court
File No. 14-CR-21-2212

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Charles J. Drapeaux, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Segal, Chief Judge; and Frisch, Judge.

**NONPRECEDENTIAL OPINION**

**FRISCH**, Judge

Appellant asserts that the postconviction court abused its discretion in denying his petition for relief because he received ineffective assistance of counsel when he was

misadvised about the immigration consequences of his plea and his plea was otherwise unintelligent. Because the postconviction court did not abuse its discretion in determining that appellant did not meet his burden to establish that he received ineffective assistance of counsel or otherwise abuse its discretion, we affirm.

**FACTS**

On October 25, 2019, respondent State of Minnesota charged appellant Fidele Ndaruhutse with first-degree aggravated robbery pursuant to Minn. Stat. § 609.245, subd. 1 (2018). The statement of probable cause reflects that Ndaruhutse robbed a woman entering her apartment building after putting a knife to her throat. Ndaruhutse was a juvenile at the time of the offense, and the matter was designated as an extended jurisdiction juvenile (EJJ) proceeding.

Upon learning that Ndaruhutse was not a United States citizen, trial counsel contacted immigration counsel to discuss the immigration consequences associated with a guilty plea to Ndaruhutse's assault charges in a separate file. Immigration counsel advised trial counsel that "[j]uvenile adjudications are not deportable crimes unless the non-citizen is prosecuted as an adult or is put on EJJ and violates after turning 18." Immigration counsel also noted the immigration consequences associated with a conviction for an aggravated felony include presumptive mandatory deportation and a permanent bar from returning to the United States. Immigration counsel also repeated that "deportability only applies if [Ndaruhutse] is prosecuted as an adult [or] violates EJJ after turning 18." Trial counsel thereafter advised Ndaruhutse of the opinions of immigration counsel and provided a copy of the email from immigration counsel to Ndaruhutse.

2

On December 9, 2019, Ndaruhutse pleaded guilty to first-degree aggravated robbery. During the colloquy, the state asked about Ndaruhutse's understanding of the immigration consequences of his plea:

> Q: Have you discussed with your attorney consequences of entering this plea when you're not a citizen of the United States?
> A: Yes.
>
> Q: And has he discussed with you or provided you with information so you're able to make an informed decision on this regarding immigration consequences?
> A: Yes.
>
> Q: And you still wish to go forward although this is an offense that you very likely could be deported on?
> A: Yes.

The district court then received testimony on the factual basis for the plea, found that Ndaruhutse entered his plea freely, knowingly, and intelligently, and ordered a predisposition investigation report (PDI).

On January 16, 2020, the district court held a disposition hearing. At the hearing, the state noted that the victim requested restitution and asked the district court to include restitution in the disposition. The state and trial counsel agreed that the restitution had not been discussed as part of the plea, and the state noted Ndaruhutse could withdraw his plea. Ndaruhutse did not move to withdraw his plea.

The district court imposed a stayed 48-month adult sentence, ordered Ndaruhutse to complete a juvenile program, and placed Ndaruhutse on supervised probation until he turned 21. The district court also acknowledged restitution was "not contemplated in the plea agreement" but ordered Ndaruhutse to pay restitution.

On March 28, 2021, the district court received a probation-violation report. At a revocation hearing, Ndaruhutse admitted to the probation violation. The district court revoked Ndaruhutse's EJJ status and executed the adult sentence.

On January 19, 2023, Ndaruhutse petitioned for postconviction relief seeking to vacate his conviction and withdraw his guilty plea. On June 20, the postconviction court held an evidentiary hearing and received testimony from trial counsel, an expert in immigration consequences of criminal charges, Ndaruhutse, and Ndaruhutse's father. On October 23, the postconviction court denied Ndaruhutse's petition for relief.

Ndaruhutse appeals.

**DECISION**

Ndaruhutse argues that the postconviction court abused its discretion by denying his petition because (1) he received ineffective assistance of counsel when his trial counsel affirmatively misadvised him of the immigration consequences of his plea and (2) his plea was otherwise unintelligent as he was not advised of the restitution consequences of his plea. We address each argument in turn.

We review the denial of a postconviction petition for an abuse of discretion. *Brown v. State*, 895 N.W.2d 612, 617 (Minn. 2017). "A [postconviction] court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Martin v. State*, 969 N.W.2d 361, 363 (Minn. 2022) (quotation omitted). "We review legal issues de novo." *Id.*

4

**I.** **The postconviction court did not abuse its discretion by denying Ndaruhutse's petition because he did not meet his burden to show that he received ineffective assistance of counsel.**

Ndaruhutse argues that the postconviction court abused its discretion in denying his petition because he established that his trial counsel was ineffective by misadvising him of the immigration consequences of the guilty plea.

The Sixth Amendment right to effective assistance of counsel extends to a defendant's decision to plead guilty. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). A party may withdraw a guilty plea after sentencing when it "is necessary to correct a manifest injustice." *Kaiser v. State*, 641 N.W.2d 900, 903 (Minn. 2002). "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). And "[t]o be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Id.* Ineffective assistance of counsel may render a plea involuntary, and thus constitutionally invalid, when counsel's advice falls below the "range of competence demanded of attorneys in criminal cases." *See State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994) (quotation omitted).

We evaluate ineffective-assistance-of-counsel claims under the two-part test set forth in *Strickland*. *See Peltier v. State*, 946 N.W.2d 369, 372 (Minn. 2020) (applying the *Strickland* test). Trial counsel's performance is ineffective if (1) the representation fell "below an objective standard of reasonableness" and (2) "there was a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* (quotation omitted).

5

"We review a [postconviction] court's application of the *Strickland* test de novo because it involves a mixed question of law and fact." *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017). But we defer to a postconviction court's findings of fact and "will not set them aside" unless they are clearly erroneous. *See Sanchez v. State*, 890 N.W.2d 716, 719-20 (Minn. 2017). And "[t]he defendant bears the burden of establishing the facts that support his claim that the guilty plea is invalid." *State v. Mikulak*, 903 N.W.2d 600, 603 (Minn. 2017).

A. **Trial counsel provided Ndaruhutse with objectively unreasonable advice.**

Ndaruhutse argues that he satisfied the first prong of the *Strickland* test because trial counsel's performance fell below an objective standard of reasonableness by advising Ndaruhutse that deportation could only occur upon adult prosecution or a violation of probation after turning 18 years old. We agree.

"The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266-67 (Minn. 2014) (quotation omitted). And "there is a strong presumption that counsel's performance was reasonable." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013).

We first identify the assistance that Ndaruhutse claims was ineffective. Ndaruhutse claims that trial counsel's advice that he would be deported only if he was prosecuted as an adult or violated his probation after turning 18 fell below an objective standard of reasonableness. During the postconviction proceedings, Ndaruhutse offered expert

6

testimony that this immigration advice was not accurate. The expert testified that "[t]here is not on point case law that says that a Minnesota EJJ adjudication without a revocation is a conviction for immigration purposes," but caselaw from other jurisdictions suggests that an EJJ adjudication would act as such a conviction. The expert further opined that trial counsel's advice that Ndaruhutse was "safe from deportation" was "misleading as to the benefits of any potential resolution of the case and . . . the potential immigration consequences." The expert ultimately concluded that the advice was "materially incorrect and misleading."

During the postconviction proceedings, neither the state in its briefing nor the postconviction court in its order addressed whether trial counsel's advice fell below an objective standard of reasonableness. Instead, both addressed only whether trial counsel complied with the requirement to affirmatively advise Ndaruhutse of deportation consequences of his guilty plea, as required under *Padilla*. *Sanchez*, 890 N.W.2d at 721 (explaining that *Padilla* establishes "affirmative steps" an attorney must take "before allowing a noncitizen client to accept a plea deal," including informing a defendant of such consequences if it is clear that a conviction "will subject the defendant to a risk of removal from the United States"). But Ndaruhutse does not argue that trial counsel failed to comply with the requirements of *Padilla*, and instead argues that the advice from trial counsel regarding immigration consequences fell below an objective standard of reasonableness because it was wrong.[1]

---

[1] Ndaruhutse relies upon *State v. Ellis-Strong* to establish that he received ineffective assistance of counsel. 899 N.W.2d 531 (Minn. App. 2017). *Ellis-Strong* states that

We conclude that trial counsel's advice that Ndaruhutse risked deportation only if he was prosecuted as an adult or violated his probation after turning 18 falls below an objective standard of reasonableness because deportation consequences of EJJ adjudication are unclear. Ndaruhutse was convicted of a deportable offense under EJJ status. *See* 8 U.S.C. § 1227(a)(2)(iii) (2018) (providing that a non-citizen convicted of an "aggravated felony at any time after admission is deportable"); *Campos v. State*, 816 N.W.2d 480, 484 (Minn. 2012) (stating that a Minnesota simple robbery conviction was an aggravated felony for federal immigration purposes). But because Minnesota EJJ adjudication is a hybrid approach between the juvenile-delinquency system and adult-criminal-justice system, deportability based on an EJJ adjudication is unclear. *See In re Devison-Charles*, 22 I. & N. Dec. 1362, 1365 (BIA 2000) (summarizing authority "that juvenile delinquency proceedings are not criminal proceedings, that acts of juvenile delinquency are not crimes, and that findings of juvenile delinquency are not convictions for immigration purposes").

Because trial counsel's advice to Ndaruhutse failed to capture this uncertainty, it fell below the customary skills and diligence that a reasonably competent attorney would have provided in similar circumstances. *See Vang*, 847 N.W.2d at 266-67; *see also Ellis-Strong*, 899 N.W.2d at 539 (stating that an attorney's mistake of law "may amount to

---

"affirmative misadvice about [collateral] consequences may amount to ineffective assistance of counsel if the *Strickland* factors are met." *Id.* at 539. We note that *Padilla* questions the collateral-versus-direct-consequences distinction as applied to deportation consequences. 559 U.S. at 364-66. But we need not resolve the collateral-versus-direct-consequences distinction here because we apply *Strickland* regardless to determine whether Ndaruhutse received ineffective assistance of counsel. *Ellis-Strong*, 899 N.W.2d at 539.

an objectively unreasonable performance"). Thus, we conclude that Ndaruhutse met his burden to establish that he received objectively unreasonable advice.

## B. Ndaruhutse was not prejudiced by counsel's objectively unreasonable advice.

Ndaruhutse argues that the postconviction court abused its discretion in denying his petition because he established that he would not have accepted the state's offer to plead guilty but for counsel's objectively unreasonable advice. To establish prejudice, Ndaruhutse "must demonstrate a reasonable probability that, but for counsel's ineffective representation, he would not have entered his plea." *Johnson v. State*, 673 N.W.2d 144, 148 (Minn. 2004). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The postconviction court determined that Ndaruhutse did not meet his burden to establish prejudice. In so doing, the postconviction court noted Ndaruhutse's testimony "that he would not have pled guilty had he known an EJJ guilty plea to first-degree aggravated robbery may subject him to deportation." But the postconviction court did not "find that testimony credible in light of all the other evidence in the record." In making this finding, the postconviction court specifically referenced Ndaruhutse's testimony during the plea colloquy agreeing that he "very likely could be deported on" the charged offense. We decline to disturb the postconviction court's credibility determination because "[t]he credibility of witnesses and the weight to be given their testimony are determinations to be made by the factfinder." *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (quotation omitted); *see also State v. Eakins*, 720 N.W.2d 597, 604 (Minn. App. 2006)

9

("[C]redibility determinations are the exclusive province of the district court and will not be disturbed on appeal absent a showing of clear error." (citing *DeMars v. State*, 352 N.W.2d 13, 16 (Minn. 1984)). The postconviction court did not abuse its discretion in determining that the evidence did not establish a reasonable probability that, but for counsel's ineffective representation, Ndaruhutse would not have entered his plea.

We therefore conclude that the postconviction court did not abuse its discretion by denying Ndaruhutse's petition for relief.

## II. The postconviction court did not abuse its discretion by denying Ndaruhutse's petition for relief because he did not meet his burden to show his plea was unintelligent.

Ndaruhutse alternatively seeks to withdraw his plea, claiming that it was unintelligent, and thus constitutionally invalid, because he was not advised of the restitution consequences before he entered his plea. We disagree.

A plea agreement "represent[s] a bargained-for understanding between the government and criminal defendants in which each side foregoes certain rights and assumes certain risks in exchange for a degree of certainty as to the outcome of criminal matters." *State v. Meredyk*, 754 N.W.2d 596, 603 (Minn. App. 2008) (quotation omitted). "[A] district court generally should not alter the terms of a restitution obligation negotiated as part of a plea agreement if it materially changes the expectations of the parties to the bargain." *Id.* at 604. And a plea agreement may be unintelligent when a district court imposes additional conditions of probation not contemplated by the plea agreement. *Compare State v. Noreen*, 354 N.W.2d 77, 78 (Minn. App. 1984) (remanding for resentencing when the district court ordered the defendant to pay $2,000 in restitution and

restitution was not contemplated by the plea agreement), *with State v. Anderson*, 507 N.W.2d 245, 246-47 (Minn. App. 1993) (affirming the district court's more than $10,000 restitution order when the record suggested the defendant "should have been aware that the victim might seek and the court might order restitution"), *rev. denied* (Minn. Dec. 22, 1993).

We conclude that the postconviction court did not abuse its discretion in determining that Ndaruhutse failed to show that the restitution order rendered his plea unintelligent. The postconviction court's finding that Ndaruhutse had notice of the restitution request is supported by the record. The PDI contemplated restitution and trial counsel had reviewed the PDI and noted no errors or corrections. The record also supports the postconviction court's finding that Ndaruhutse had an opportunity to withdraw his plea when the state sought restitution and that he declined to do so.

Thus, we conclude that the postconviction court did not abuse its discretion by denying Ndaruhutse's petition for relief.

**Affirmed.**