STATE OF MINNESOTA

IN SUPREME COURT

A14-1679

Court of Appeals                                                          Stras, J.
                                                       Concurring, Lillehaug, J.
                                          Took no part, Chutich, McKeig, JJ.

Francisco Herrera Sanchez,

                    Appellant,

vs.                                                      Filed:  February 22, 2017
                                                        Office of Appellate Courts

State of Minnesota,

                    Respondent.

_____


Herbert A. Igbanugo, Jason A. Nielson, Igbanugo Partners Int'l Law Firm, PLLC, Minneapolis, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

John L. Fossum, Rice County Attorney, Terence Swihart, Assistant Rice County Attorney, for respondent.

Eric J. Magnuson, Colin F. Peterson, Robins Kaplan, LLP, Minneapolis, Minnesota;

Katherine L. Evans, R. Linus Chan, University of Minnesota Law School Center for New Americans, Minneapolis, Minnesota; and

John Keller, Sheila Stuhlman, Immigrant Law Center of Minnesota, Saint Paul, Minnesota for amicus curiae Immigrant Law Center of Minnesota.

Bruce D. Nestor, De León & Nestor, LLC, Minneapolis, Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

_____

1

S Y L L A B U S

Defense counsel was only required to inform a noncitizen client that his guilty plea to third-degree criminal sexual conduct may subject him to removal from the United States, Minn. Stat. § 609.344, subd. 1(b) (2016), because it was not "truly clear" that the offense constituted "sexual abuse of a minor" under the aggravated-felony provision of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A) (2015).

Affirmed.

O P I N I O N

STRAS, Justice.

This case requires us to determine the extent of a criminal-defense attorney's obligation under the Sixth Amendment to the United States Constitution to inform a noncitizen defendant of the immigration consequences of a guilty plea. The appellant, Francisco Herrera Sanchez, pleaded guilty to third-degree criminal sexual conduct, Minn. Stat. § 609.344, subd. 1(b) (2016), which led to the initiation of removal proceedings against him. In an effort to avoid deportation, Sanchez filed an emergency motion to withdraw his guilty plea, in which he argued, in part, that his counsel provided ineffective assistance by failing to accurately inform him that the plea would lead to his removal from the United States. The postconviction court denied Sanchez's motion to withdraw the plea, and the court of appeals affirmed. Because Sanchez's counsel accurately advised him about the immigration consequences of his plea, we also affirm.

Sanchez, who was born in Mexico, arrived in the United States with his parents as a minor in 2005. In 2012, he applied for and received Deferred Action for Childhood Arrivals ("DACA"), a program under which noncitizens who come to the United States as children can receive a limited deferral from removal proceedings. *See Consideration of Deferred Action for Childhood Arrivals (DACA)*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-daca (last updated Dec. 22, 2016).

In 2013, when Sanchez was 19 years old, the State charged him with two counts of third-degree criminal sexual conduct. Minn. Stat. § 609.344, subd. 1(b). The complaint alleged that Sanchez sexually penetrated two minor children between 13 and 16 years of age. The State also charged Sanchez with the offense of furnishing alcohol to a minor. Minn. Stat. § 340A.702(8) (2016); *see* Minn. Stat. § 340A.503, subd. 2(1) (2016).

Before trial, Sanchez pleaded guilty to one of the counts of third-degree criminal sexual conduct and to the count of furnishing alcohol to a minor. In exchange, the State agreed to dismiss the remaining criminal-sexual-conduct count and recommend that the district court stay the imposition of Sanchez's sentence, place him on probation, and require him to serve no more than 90 days of probationary jail time. As part of the plea process, Sanchez signed a written petition that included the following statement: "My attorney has told me and I understand that if I am not a citizen of the United States this plea of guilty *may* result in deportation, exclusion from admission to the United States of America or denial of citizenship." (Emphasis added.)

During the plea hearing, defense counsel questioned Sanchez. Among other things, defense counsel confirmed that Sanchez had reviewed the plea agreement. In response to questioning, Sanchez agreed that he was not a citizen of the United States and "that as a result of a plea in this particular matter that, if [he was] not a citizen of the United States, a plea of guilty *could* result in either deportation, exclusion from admission to the United States, or denial of citizenship." (Emphasis added.) The hearing also established the factual basis of the plea when Sanchez admitted that he had engaged in sexual intercourse with a minor named K.R., whom he knew at the time was less than 16 years of age. He also admitted that he provided alcohol to K.R. and her friends, each of whom was younger than 21 years old.

At the sentencing hearing, the district court formally accepted Sanchez's plea and stayed imposition of his sentence, *see* Minn. Stat. § 609.135 (2016), which included two concurrent terms of 90 days in jail and 10 years of supervised probation. According to the warrant of commitment and by operation of law, successful completion of the probationary term would convert Sanchez's felony conviction of third-degree criminal sexual conduct into a misdemeanor. *See* Minn. Stat. § 609.13, subd. 1(2) (2016).

Immediately after sentencing, officers from Immigration and Customs Enforcement ("ICE") took Sanchez into custody. That same day, ICE issued a final administrative removal order. The order explained that Sanchez was subject to removal from the United States because the offense of third-degree criminal sexual conduct involving a minor, Minn. Stat. § 609.344, subd. 1(b), constitutes an "aggravated felony" under the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101(a)(43)(A) (2015) (defining

4

"aggravated felony" to include "sexual abuse of a minor"); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) (2012) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").

With the assistance of new counsel, Sanchez filed an emergency motion to withdraw his guilty plea under Minn. R. Crim. P. 15.05 and Minn. Stat. § 590.01 (2016). The motion broadly claimed that Sanchez's plea was not accurate, voluntary, or intelligent. The motion specifically relied on a recent Supreme Court decision, *Padilla v. Kentucky*, to argue that plea counsel provided constitutionally inadequate representation by giving him incorrect advice about the immigration consequences of his guilty plea. 559 U.S. 356, 369 (2010) (requiring criminal-defense counsel to advise noncitizen clients that a plea *may* result in deportation when the immigration consequences are "unclear," or that deportation is presumptively mandatory when the immigration consequences are "truly clear"). Sanchez argued that *Padilla* required his attorney to advise him that the plea *would* result in his deportation, rather than just that deportation was a *possibility*. Such advice was necessary, according to Sanchez, because his removal was "an absolute certainty" under federal law.

The postconviction court granted an evidentiary hearing on Sanchez's motion. Both plea counsel and Sanchez testified, but their testimony was inconsistent. The court resolved the inconsistency by crediting counsel's testimony over Sanchez's testimony, which led the court to find that counsel informed Sanchez both "that he was *looking at deportation*" and that he "*would be deported* as a result of his plea."

After reviewing the relevant federal statutes and cases, the postconviction court concluded that counsel's advice was constitutionally adequate because the immigration

5

consequences of Sanchez's plea were not truly clear. The court reasoned that the definition of "sexual abuse of a minor" is unsettled under federal law, making it unclear whether third-degree criminal sexual conduct qualifies as an aggravated felony under the INA. For that reason, the court held that it was constitutionally sufficient for plea counsel to have informed Sanchez that he "was looking at deportation" or could be deported.

In the alternative, the postconviction court concluded that, even if the immigration consequences were "clear and certain," plea counsel provided effective assistance "based upon his private advice" to Sanchez that he "would be deported." This advice, the court stated, was sufficient to inform Sanchez that deportation was a "certain result" of the plea. Accordingly, regardless of the level of specificity of the advice that plea counsel was required to give Sanchez, the court held that counsel had done enough. The court therefore denied Sanchez's motion to withdraw his guilty plea.

The court of appeals affirmed. *Sanchez v. State*, 868 N.W.2d 282 (Minn. App. 2015). In its view, plea counsel provided constitutionally sufficient advice by informing Sanchez that deportation was a possibility, because the immigration consequences of his guilty plea were not truly clear under federal law. *Id.* at 287-89. We granted Sanchez's petition for review to determine whether plea counsel's advice satisfied the Sixth Amendment to the United States Constitution.

II.

This case requires us to determine whether the postconviction court erred when it refused to allow Sanchez to withdraw his guilty plea. In evaluating the postconviction court's actions, we review the denial of Sanchez's motion for an abuse of discretion. *Reed*

6

*v. State*, 793 N.W.2d 725, 729 (Minn. 2010). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (citation omitted) (internal quotation marks omitted). We review findings of fact for clear error and issues of law de novo. *McKenzie v. State*, 872 N.W.2d 865, 870 (Minn. 2015).

Although Sanchez alternatively claims that his plea counsel was ineffective and that he had a right to withdraw his guilty plea, both claims turn on a single legal proposition: whether he was constitutionally entitled to specific, definitive advice about the immigration consequences of pleading guilty. Sanchez argues that the vague and inconclusive advice he received before pleading guilty was constitutionally inadequate under the Sixth Amendment given the allegedly clear deportation consequences of the plea.[1]

To prevail on his Sixth Amendment claim, Sanchez must show: (1) that plea counsel's representation "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 687-88, 694 (1984); *accord State v. Taylor*, 869 N.W.2d 1, 21 (Minn. 2015); *Campos v. State*, 816 N.W.2d 480, 485-86 (Minn. 2012). We need not analyze both elements of the *Strickland* test if one or the other is determinative. *Staunton v. State*, 784 N.W.2d 289, 300 (Minn. 2010).

---

[1]     Sanchez did not raise a separate claim under the Minnesota Constitution.

Before the Supreme Court decided *Padilla* in 2010, the rule in Minnesota was that a criminal-defense attorney had no duty to inform a noncitizen defendant of the immigration consequences of a guilty plea because such consequences were "collateral" to the decision of whether to plead guilty. *Alanis v. State*, 583 N.W.2d 573, 578-79 (Minn. 1998) (holding that defense counsel was not required to inform a noncitizen defendant that his plea would lead to deportation because the immigration consequences did not "flow definitely, immediately, and automatically from the guilty plea"), *abrogation recognized by Taylor v. State*, 887 N.W.2d 821, 824 (Minn. 2016). *Padilla* altered the landscape by establishing that one component of providing constitutionally effective representation is informing a noncitizen defendant about the immigration consequences of pleading guilty, and in particular, the risk of removal from the United States. 559 U.S. at 374; *accord Campos*, 816 N.W.2d at 486-87.

*Padilla* also recognized, however, that "immigration law can be complex" and that, in some circumstances, less-than-perfect advice can be constitutionally adequate. *Id.* at 369. In fact, the Supreme Court determined that the specificity of the constitutionally required advice depends on whether the immigration law that applies to a particular case is "succinct and straightforward" or "unclear or uncertain." *Id.* When the immigration consequences of a guilty plea are "truly clear," defense counsel must affirmatively advise a defendant that the plea will "subject [the defendant] to automatic deportation." *Id.* at 360, 369. If the law is not "succinct and straightforward," then the attorney's obligation is "more limited": all counsel must do is "advise a noncitizen client that pending criminal

8

charges may carry a risk of adverse immigration consequences." *Id.* at 369. The disputed question here is to which of these two categories Sanchez's case belongs.

## III.

*Padilla* establishes some general principles about when immigration law is sufficiently clear to require an attorney to give definitive advice about the immigration consequences of a guilty plea. *Padilla* involved a noncitizen defendant who, on the advice of his attorney, pleaded guilty to the transportation of a large amount of marijuana. *Id.* at 359. Padilla's attorney affirmatively told him that he "did not have to worry about immigration status since he had been in the country so long." *Id.* (citation omitted) (internal quotation marks omitted). The attorney's advice was incorrect because Padilla's guilty plea rendered him presumptively deportable under federal law. *Id.* at 368-69.

The question before the Supreme Court was whether the immigration consequences of Padilla's guilty plea were "truly clear" or were "unclear or uncertain." *Id.* at 369. Padilla's case fell into the former category, according to the Court, because "the terms of the relevant immigration statute [were] succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* at 368. The statute unambiguously stated that an individual "convicted of a violation . . . relating to a controlled substance . . . other than [personal possession of a small amount of marijuana] is deportable." *Id.* (quoting 8 U.S.C. § 1227(a)(2)(B)(i) (2012)). The ease with which Padilla's attorney could have provided accurate advice by simply reading the statute led the Court to conclude that Padilla had received constitutionally ineffective advice before entering his plea. *Id.* at 368-69.

9

*Padilla* establishes that criminal-defense attorneys must take some affirmative steps before allowing a noncitizen client to accept a plea deal. First, at a minimum, an attorney must review the relevant immigration statutes to determine whether a conviction will subject the defendant to a risk of removal from the United States. Second, if conviction of the charged offense clearly subjects the defendant to removal from the United States, the attorney has a constitutional obligation to advise the defendant of this fact before he or she enters a guilty plea. If it does not, then a general advisory warning about the possible immigration consequences of a guilty plea is sufficient.

What *Padilla* fails to resolve, however, is what an attorney must do when the applicable immigration statutes are less than truly clear, but administrative interpretations or case law indicate that a conviction will render the defendant deportable. *See Padilla*, 559 U.S. at 381 (Alito, J., concurring) (noting that the Court's decision left unresolved the situation in which "application of the [statutory] provision to a particular case is not clear but a cursory examination of case law or administrative decisions would provide a definitive answer"). A strict interpretation of *Padilla* suggests that an attorney's obligation to investigate ends at the relevant immigration statutes, even if binding case law establishes that a conviction will subject a noncitizen defendant to removal from the United States. *See Padilla*, 559 U.S. at 368-69 (analyzing only the statute to determine whether the law was "truly clear"). In contrast, Sanchez urges us to adopt an expansive interpretation of *Padilla*, which would require a criminal-defense attorney to research all relevant court decisions and administrative interpretations because of the harsh consequences that flow from an attorney's erroneous advice to a noncitizen defendant. We need not decide which

10

view of *Padilla* is correct, however, because, under either view, the immigration consequences of Sanchez's conviction were not truly clear.[2]

A.

Under the strict interpretation of *Padilla*, an attorney representing a noncitizen defendant must only review the relevant immigration statutes and then advise his or her client about the immigration consequences of a plea. 559 U.S. at 368-69. These actions are, as stated above, the least a criminal-defense attorney must do to comply with the Sixth Amendment.

The parties identify two statutes that render a noncitizen presumptively deportable for the commission of an "aggravated felony." *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. § 1228(c) (2012) ("An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States."). These two provisions

---

[2]     The concurrence recognizes that plea counsel testified inconsistently on the exact nature of his pre-plea-hearing advice to Sanchez, claiming at one point that he informed Sanchez that "he would be deported as a result of the plea," and later denying that he told Sanchez that deportation "would be a certainty." We need not address this inconsistency, however, because the level of specificity of the advice does not affect the outcome of this case. The evidentiary-hearing transcript supports the postconviction court's finding that plea counsel *at least* told Sanchez that he *could* be deported, which is all that is required when the immigration consequences of a guilty plea are not truly clear. *See Padilla*, 559 U.S. at 369.

       We note that Sanchez does not make the converse argument: the law was not truly clear and that the advice given was *too specific*, causing him to *refuse* a favorable plea deal based on inaccurate plea advice. An argument of this nature may have required us to evaluate the postconviction court's finding that plea counsel told Sanchez that he would be deported. But because Sanchez does not make such an argument, we need not resolve the factual dispute about plea counsel's testimony.

11

are, like the statute in *Padilla*, truly clear that a noncitizen defendant will be subject to removal from the United States if he or she commits certain crimes. In fact, 8 U.S.C. § 1227(a)(2)(A)(iii) describes the immigration consequences in the same terms as the statute from *Padilla*, stating that a noncitizen "is deportable" if he or she has been convicted of a qualifying offense.

Unlike the statute in *Padilla*, however, the statutes in this case are not clear about which offenses qualify as aggravated felonies. In *Padilla*, the statute said that a noncitizen felon is deportable after a conviction of any controlled-substance offense "other than a single offense involving possession for one's own use of 30 grams or less of marijuana." 8 U.S.C. § 1227(a)(2)(B)(i). In contrast, the list of aggravated felonies is long and includes, as relevant here, the "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). The INA does not define the phrase, "sexual abuse of a minor."

Sanchez makes a credible argument that the phrase "sexual abuse of a minor" *should* include sexual penetration of a person between 13 and 16 years of age, the definition of third-degree criminal sexual conduct under Minnesota law. But even a rudimentary textual or common-sense argument is not determinative under federal immigration law, which, as the Supreme Court stated in *Padilla*, is "complex" and is "a legal specialty of its own." 559 U.S. at 369. Rather, when an immigration statute fails to define a particular offense or "a broad classification of crimes," *id.* at 368, federal courts and immigration judges examine administrative interpretations and other federal statutes to clarify which offenses are included. *See, e.g.*, *Lopez v. Gonzales*, 549 U.S. 47, 55 (2006) (drawing from the definition of "drug trafficking crime" within the federal Controlled Substances Act to

determine which felonies qualify as "illicit trafficking" under the INA); *Solano-Chicas v. Gonzales*, 440 F.3d 1050, 1055 (8th Cir. 2006) (noting that, in the absence of a statutory definition of "moral turpitude," courts look to administrative interpretations).

In *Padilla*, the Supreme Court recognized that the result might have been different if the statute in that case, instead of specifically describing the type of offense, had involved "a broad classification of crimes." *Id.* at 368-69. As Justice Alito stated in his concurring opinion in *Padilla*, the aggravated-felony provisions of the INA reflect broad classifications, not specific crimes, which makes defense counsel's task difficult. 559 U.S. at 378-79 (Alito, J., concurring) ("Defense counsel who consults a guidebook on whether a particular crime is an 'aggravated felony' will often find that the answer is not 'easily ascertained.' "); *see also Nijhawan v. Holder*, 557 U.S. 29, 37 (2009) (identifying several of the crimes listed in 8 U.S.C. § 1101(a)(43), including "murder, rape, or sexual abuse of a minor," as "generic crimes"). Consistent with Justice Alito's observation, federal courts have not reached a consensus on the meaning of the phrase "sexual abuse of a minor." *Rangel-Perez v. Lynch*, 816 F.3d 591, 599-601 (10th Cir. 2016) (analyzing the split among federal courts regarding the meaning of "sexual abuse of a minor"). We therefore conclude, using *Padilla*'s reasoning, that the relevant immigration statutes were not truly clear about whether Sanchez would be subject to removal after pleading guilty to third-degree criminal sexual conduct.

If we were to conclude here that the aggravated-felony provisions were truly clear, criminal-defense attorneys would be tempted to make an "educated guess" about the coverage of federal immigration law rather than potentially subject themselves to an

13

ineffective-assistance-of-counsel claim. *Cf. Padilla*, 559 U.S. at 382 (Alito, J., concurring) ("Incomplete legal advice may be worse than no advice at all because it may mislead and may dissuade the client from seeking advice from a more knowledgeable source."). Specific advice that is incorrect may cause defendants to mistakenly reject plea deals that would otherwise be advantageous to them, which is at least as problematic as providing defendants with generalized advice that induces them to mistakenly accept plea deals that could lead to their deportation, which was the situation presented in *Padilla*. This is why *Padilla* itself recognizes that criminal-defense attorneys who face "unclear or uncertain" statutes must only "advise a noncitizen client that pending criminal charges *may* carry a risk of adverse immigration consequences," 559 U.S. at 369 (emphasis added), which is what Sanchez's plea counsel did in this case.

B.

We now turn to the expansive interpretation of *Padilla*, which would require criminal-defense attorneys to review not only the relevant federal immigration statutes, but also case law and administrative interpretations, when evaluating whether the law is truly clear. Though *Padilla* does not provide direct support for this interpretation, it does discuss "the duty of counsel to provide [a] client with *available advice* about an issue like deportation." *Id.* at 371 (emphasis added). Further, *Padilla* states that an attorney's obligation turns on whether "the *law*" is "succinct and straightforward." *Id.* at 369 (emphasis added). These general statements in *Padilla* about "available advice" and "the law" are arguably references to the full array of legal sources, including case law and administrative interpretations, not just relevant statutes. *See, e.g.*, *State v. Ortiz-*

14

*Mondragon*, 866 N.W.2d 717, 727-34 (Wis. 2015) (examining case law and administrative interpretations to determine the clarity of the undefined phrase, "crime involving moral turpitude").

Without deciding whether the expansive interpretation of *Padilla* is correct, we will review the relevant case law and administrative interpretations of "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A), to determine if they provide any more clarity than applying the aggravated-felony statutes alone. Relying on these sources, Sanchez argues that the case law in particular makes it truly clear that his guilty plea to third-degree criminal sexual conduct exposed him to presumptively mandatory removal. We disagree.

Under the expansive interpretation, the lack of a statutory definition of "sexual abuse of a minor" requires us to look to other sources, including federal-court decisions and administrative interpretations from the Board of Immigration Appeals ("BIA"), to determine its meaning. In 1999, the BIA, in an en banc decision, held that "sexual abuse of a minor" includes "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 995 (BIA 1999) (en banc) (quoting 18 U.S.C. § 3509(a)(8) (2012)). In adopting this definition, the BIA relied on a federal statute addressing child victims and witnesses, rather than the federal offense of "sexual abuse of a minor or ward." *Id.* at 995-96; *see* 18 U.S.C. § 2243 (2012). It rejected definitions from other federal criminal statutes because it viewed those definitions as being "too restrictive to encompass the numerous state crimes that can be

15

viewed as sexual abuse and the diverse types of conduct that would fit within the term as it is commonly used." *Rodriguez-Rodriguez*, 22 I. & N. Dec. at 996.

Even though the BIA decision is binding on immigration courts operating within Minnesota, *see Afolayan v. I.N.S.*, 219 F.3d 784, 788 (8th Cir. 2000), the law in Sanchez's case was still not truly clear for at least three reasons. First, there is presently a split among federal courts on how to determine whether a particular crime qualifies as "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A). For example, the United States Courts of Appeals for the Second, Third, and Sixth Circuits have decided to defer to the BIA's interpretation in *Rodriguez-Rodriguez*. *Esquivel-Quintana v. Lynch*, 810 F.3d 1019, 1025 (6th Cir. 2016) (deferring to the BIA's interpretation of "sexual abuse of a minor"), *cert. granted*, ___ U.S. ___ , 137 S. Ct. 368 (Oct. 28, 2016); *Restrepo v. Att'y Gen.*, 617 F.3d 787, 796 (3d Cir. 2010) (same); *Mugalli v. Ashcroft*, 258 F.3d 52, 60 (2d Cir. 2001) (same). In contrast, the United States Court of Appeals for the Ninth Circuit has rejected the BIA's interpretation and instead concluded that a federal criminal statute, not the statute on child victims and witnesses, provides the applicable definition. *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1152-58 (9th Cir. 2008) (en banc) (rejecting the BIA's definition of "sexual abuse of a minor," which the court determined was not subject to deference, in favor of the definition in 18 U.S.C. §§ 2242-46 (2012)), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc). This lack of consensus demonstrates that the law is not truly clear on which crimes constitute "sexual abuse of a minor."

Second, unlike these other circuits, the United States Court of Appeals for the Eighth Circuit has not yet addressed the interpretive question presented by this case. BIA decisions, which federal courts treat as the equivalent of administrative interpretations, are only binding on immigration courts in the absence of an interpretation by either the judicial circuit in which the immigration court sits—here, Minnesota, which is in the Eighth Circuit—or the Supreme Court. *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (holding that federal courts must defer to BIA decisions using the principles described in *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)); *Matter of U. Singh*, 25 I. & N. Dec. 670, 672 (BIA 2012) ("We apply the law of the circuit in cases arising in that jurisdiction, but we are not bound by a decision of the court of appeals in a different circuit."). In the absence of an interpretation by either court, the BIA decision is at most an administrative interpretation subject to deference by the Eighth Circuit.

Third, even if Sanchez's plea counsel had identified *Rodriguez-Rodriguez* and applied it here, it would not necessarily have yielded a clear answer to whether third-degree criminal sexual conduct constitutes "sexual abuse of a minor." Counsel would have had to apply the "categorical approach" to Sanchez's offense, *see Mowlana v. Lynch*, 803 F.3d 923, 925 (8th Cir. 2015), which involves determining whether "the state statute defining the crime of conviction categorically fits within the 'generic' federal definition of a corresponding aggravated felony." *Moncrieffe v. Holder*, ___ U.S. ___, ___, 133 S. Ct. 1678, 1684 (2013) (citations omitted) (internal quotation marks omitted). Under this approach, counsel would have needed to evaluate whether the "state offense [viewed in the

abstract] is a categorical match with a generic federal offense" by analyzing whether the State was required to prove "facts equating to the generic federal offense." *Id.* (citations omitted) (internal quotation marks omitted).

Applying the categorical approach here is complicated by the fact that, as a number of federal courts have observed, the BIA's definition of "sexual abuse of a minor" in *Rodriguez-Rodriguez* is incomplete. The United States Court of Appeals for the Fourth Circuit has noted, for example, that apart from holding that the Texas crime of "indecency with a child by exposure" qualifies as an aggravated felony, *Rodriguez-Rodriguez* "did not provide direction regarding the elements of the generic federal crime of 'sexual abuse of a minor.'" *Amos v. Lynch*, 790 F.3d 512, 520 (4th Cir. 2015); *see also Estrada-Espinoza*, 546 F.3d at 1157-58 (observing that *Rodriguez-Rodriguez* did not provide a definition that was particularized enough to perform an analysis under the categorical approach). The Tenth Circuit has similarly explained that *Rodriguez-Rodriguez* addressed only which acts constitute "sexual abuse of a minor," but did not "purport to set forth all of the elements of such an offense," including whether the generic offense has a mens rea element. *Rangel-Perez*, 816 F.3d at 598. Thus, the lack of specificity in *Rodriguez-Rodriguez*, in addition to the difficulty of applying the categorical approach to its definition of "sexual abuse of a minor," places Sanchez's case outside the realm of a truly clear application of federal immigration law.[3]

---

[3] The concurrence misunderstands our discussion of these federal cases. We do not discuss them because they are binding precedent, but rather to show that the law, even if the BIA's definition were binding, is not truly clear. This is a point that the concurrence

C.

In summary, even if *Padilla* leaves open the possibility that a criminal-defense attorney has a constitutional obligation to review relevant case law and administrative interpretations before providing advice to a noncitizen defendant contemplating a guilty plea, *Padilla* did not require Sanchez's counsel to do anything more than provide a general warning about the immigration consequences of entering the plea. If the obligation of Sanchez's counsel was limited to reading and interpreting the relevant immigration statutes, then we reach the same conclusion: the statutes were not sufficiently clear to impose an obligation on counsel to do anything more than he did. Either way, Sanchez's counsel satisfied his obligation under the Sixth Amendment.

IV.

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

MCKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

cannot, and does not, refute because the federal cases extensively discuss the fact that *Rodriguez-Rodriguez* provides, at best, an incomplete definition of "sexual abuse of a minor."

19

CONCURRENCE

LILLEHAUG, Justice (concurring).

Respectfully, I concur in the result, but on a different ground. Under *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010), a defendant must be advised of the deportation consequence of a guilty plea when such prospect is "truly clear." In this case, I disagree with the court's analysis that, when Francisco Herrera Sanchez pleaded guilty in state court to third-degree criminal sexual conduct, the deportation consequence of the plea was not "truly clear." At that time, it was clear as a bell that Sanchez would be deported, and, indeed, federal immigration authorities took him into custody the very same day that he was sentenced. Thus, Sanchez's plea counsel had an obligation to advise him of this consequence. I concur, rather than dissent, because I cannot say that the postconviction court's finding of fact that Sanchez was advised by counsel that he "would be deported as a result of his plea" is clearly erroneous.

I.

A noncitizen who is convicted of an "aggravated felony" is subject to removal. 8 U.S.C. § 1227(a)(2)(A)(iii) (2012) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."); 8 U.S.C. § 1228(c) (2012) ("An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States."). The definition of "aggravated felony" includes "sexual abuse of a minor." 8 U.S.C. § 1101a(43)(A) (2015). Discretionary relief from removal is not available to such an offender. 8 U.S.C. § 1229b(a)(3) (2012).

The term "sexual abuse of a minor" is not defined in the federal immigration statutes.  As of the time of Sanchez's sentencing, neither the Supreme Court, nor the U.S. Court of Appeals for the Eighth Circuit or the U.S. District Court for the District of Minnesota, had furnished a definition.  In the absence of such authority, immigration officials look, not to other circuits, but to the Board of Immigration Appeals ("BIA").[1] *Afolayan v. INS*, 219 F.3d 784, 788 (8th Cir. 2000) (explaining that published BIA decisions are "binding precedent upon all the administrative immigration proceedings of the INS"); 8 C.F.R.; § 1003.1(d)(1)(2016) ("[T]he [BIA], through precedent decisions, shall provide clear and uniform guidance to . . . immigration judges . . . on the proper interpretation and administration of the [Immigration and Nationality] Act and its implementing regulations."); *id.* § 1003.1(g)(2016) (stating that "[s]elected decisions designated by the [BIA] . . . shall serve as precedents in all proceedings involving the same issue").  Thus, Sanchez's plea counsel was required to look to BIA precedent to determine whether Sanchez would be pleading guilty to a crime that constituted "sexual abuse of a minor."  If so, immigration officials would be required to deport Sanchez upon his conviction, and Sanchez's plea counsel would be required to advise him of that consequence.

Long before Sanchez entered his plea, the BIA made clear the meaning of "sexual abuse of a minor" in a published decision.  According to the BIA, the term includes "the

---

[1]     The court of appeals' and the majority's reliance on the law of other circuits is a red herring.  In the absence of law from the Supreme Court, the Eighth Circuit, or the District of Minnesota, immigration officials in this state properly look to the BIA for controlling law. *Afolayan*, 219 F.3d at 788.

employment, use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children." *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 995 (BIA 1999) (en banc).

Having identified the then-controlling definition for immigration officials in Minnesota, I turn now to the nature of the offense committed by Sanchez. He pleaded guilty to, and was convicted of, third-degree criminal sexual assault under Minn. Stat. § 609.344, subd. 1(b) (2016), which is defined in relevant part as engaging in sexual penetration with another person who is "at least 13 but less than 16 years" old, by an actor who is "more than 24 months older."

Plainly, using the BIA's then-controlling definition, the offense for which Sanchez was convicted was "sexual abuse of a minor." Essentially, Sanchez pleaded guilty to using, persuading, inducing, and enticing a child to engage in sexually explicit conduct; in this case, sexual penetration. Accordingly, immigration officials bound by the BIA's definition were clearly required to deport Sanchez. Therefore, I disagree with the court's analysis that the consequences of Sanchez's plea were not "truly clear." Under *Padilla v. Kentucky*, Sanchez's guilty plea could not be intelligent unless he was advised—by counsel or by the court—of the legally obvious consequence of the plea: he would be deported. *See* 559 U.S. at 385-86.

## II.

The question then is whether Sanchez was, in fact, so advised. At the plea hearing, Sanchez acknowledged on the record that his plea "could result" in deportation. In the

written plea agreement, he acknowledged that his plea "may result in deportation." Those words were not enough; "could" and "may" do not fully and accurately convey the virtual certainty of the deportation consequence. Therefore, we must consider what else Sanchez knew when he entered his plea, including what advice he received from his attorney.

Here, there is a stark conflict in the testimony the postconviction court received during the evidentiary hearing on Sanchez's motion to withdraw his guilty plea. On the one hand, Sanchez testified that he understood only that he "could" be deported. On the other hand, Sanchez's plea counsel testified that he had advised Sanchez that Sanchez was "looking at deportation" and "would be deported." The postconviction court believed plea counsel and disbelieved Sanchez, finding as a matter of fact that: "If deportation was a certain result of Petitioner's guilty plea, then [plea counsel] accurately advised Petitioner concerning the immigration consequences of his guilty plea." Sanchez, the court found, chose to ignore the deportation consequence "because he simply thought he would not be deported." Therefore, the postconviction court concluded, Sanchez's plea was intelligently entered and his counsel did not provide ineffective assistance.

We review a postconviction court's findings of fact to determine whether they are clearly erroneous. *McKenzie v.* State, 872 N.W.2d 865, 870 (Minn. 2015). A finding of fact is clearly erroneous if, after reviewing the record, we "reach[] the firm conviction that a mistake was made." *State v. Kvam*, 336 N.W.2d 525, 529 (Minn. 1983). We will not disturb a district court's factual finding if there is reasonable evidence to support the finding. *State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008). Thus, for example, a postconviction court's finding that counsel did not fail to advise a client adequately will

not be overturned if supported by "substantial evidence." *State v. Powell*, 578 N.W.2d 727, 732 (Minn. 1998).

Here, there was conflicting testimony about what advice was given during attorney-client conferences. Both attorney and client were cross-examined. The postconviction court, being in the best position to assess the testimony, credited particular testimony of the attorney. I cannot say that the postconviction court's finding in this regard is clearly erroneous.

Therefore, because I would affirm the court of appeals on a different ground, I concur in the result.