*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0709**

Omar Kwabena Walford, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed April 8, 2024
Reversed and remanded
Cochran, Judge**

Ramsey County District Court
File No. 62-CR-16-5993

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Alexandra Meyer, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Segal, Chief Judge; and Cochran, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this appeal from the postconviction court's denial of postconviction relief, appellant argues that (1) his guilty pleas were unintelligent due to the affirmative misadvice of advisory counsel, (2) he was denied the effective assistance of advisory counsel, and

(3) his guilty pleas were invalid due to violations of due process in the evaluation of his competency to proceed. Because appellant's guilty pleas were not intelligently entered, we reverse and remand to allow appellant to withdraw his guilty pleas.

**FACTS**

On August 18, 2016, respondent State of Minnesota charged appellant Omar Kwabena Walford with terroristic threats in violation of Minnesota Statutes section 609.713, subdivision 1 (2016), and domestic abuse in violation of Minnesota Statutes section 518B.01, subdivision 14(a) (2016), based on allegations that Walford threatened his estranged wife while speaking with her over the phone and in person.

Walford was initially represented by a public defender but later requested to represent himself. The district court granted Walford's request to represent himself and discharged his public defender. At a subsequent hearing, Walford affirmed his waiver of counsel and declined advisory counsel. The district court, however, appointed advisory counsel sua sponte under Minnesota Rule of Criminal Procedure 5.04, subdivision 2, "because of concerns about fairness of the process." The district court also affirmed that Walford "retain[ed] the right to decide when and how to use advisory counsel."

*Pretrial Proceedings and First Competency Evaluation*

At a pretrial hearing in June 2017, Walford told the district court that he had "persistent and severe mental illnesses"; struggled with attention-deficit disorder and attention-deficit hyperactivity disorder; and was forced to represent himself "when [he] probably should not be."

2

The district court ordered a competency evaluation under Minnesota Rule of Criminal Procedure 20.01 to determine whether Walford was competent to proceed. The competency evaluation concluded that Walford had several mental-health disorders but nevertheless opined that Walford was competent to proceed because he understood the charges against him, was able to discuss his version of events in a logical manner, and had a rational trial strategy. The evaluation was submitted to the district court and received by the prosecutor.

At a September 8, 2017 hearing,[1] the district court asked the parties if they had any additions or corrections to the competency evaluation. The state declined, but Walford objected to the evaluation, explaining he "had two prior evaluations" that "were totally different than this one." Walford did not submit his objection in writing or request a contested competency hearing. The district court noted Walford's objection, adopted the evaluation, and found that Walford was competent to proceed.

The trial was delayed, however, until February 2020, after the district court ordered several continuances in response to Walford's complaints that the state was not responding to his discovery requests. During his many pretrial hearings, Walford repeatedly expressed his desire to preserve his right to appeal.

Shortly before trial, the district court relieved advisory counsel of his duties because Walford "[did not] talk to him" and "[did not] want to talk to him." The district court

---

[1] The record does not reflect whether Walford or his advisory counsel received a copy of the competency evaluation before the September 8, 2017 hearing. Walford alleges that his advisory counsel received a copy before this date but that he did not.

3

indicated that it would appoint different advisory counsel at trial because Walford did not understand the court rules.

*Trial and Second Competency Evaluation*

During jury selection, Walford stated that he was "done" and refused to proceed. After a prolonged exchange with the district court, the district court suspended proceedings and ordered another rule 20.01 competency evaluation. The district court explained that it was "concerned about [Walford's] competency" based on his statements and behavior. The district court also appointed advisory counsel under rule 5.04, subdivision 2, based on its concerns about "[d]elays in completing the trial, the potential for disruption by the defendant, or the complexity or length of trial."

Walford's 2020 competency evaluation similarly concluded that Walford suffered from several mental-health disorders but nevertheless opined that Walford was competent to proceed. Because Walford refused to participate in the evaluation, the evaluator relied on other documentation related to Walford's competence, including two rule 20.01 evaluations; one psychological evaluation; incident, discipline, and mental-health reports from various correctional facilities where Walford had been incarcerated; presentence investigation reports; and various other documents. Based on his review, the evaluator concluded that Walford's mental health and cognitive ability remained unchanged from his prior competency evaluations and determined that Walford was competent to proceed.

On May 20, 2020, the district court issued an order adopting the 2020 competency evaluation and found Walford competent to proceed. Neither party objected to the competency finding or requested a contested competency hearing.

4

*Alford Pleas and Sentencing*

Shortly after the 2020 competency evaluation, Walford entered an *Alford* plea to both charges.[2]  At the plea hearing, advisory counsel informed the district court that the parties had been negotiating a plea deal and, earlier in the day, Walford authorized advisory counsel to present the state with a counteroffer to the state's last offer.  The counteroffer "call[ed] for an *Alford* plea to both counts" with time running concurrently to time that he was already serving in prison.  The state accepted the offer, and Walford told the court that he wished to plead guilty by an *Alford* plea.

Advisory counsel then reviewed the plea agreement with Walford on the record before the district court.  Advisory counsel confirmed Walford's understanding of an *Alford* plea, including that Walford would be "giving up certain constitutional rights" even though he was maintaining his innocence.  Advisory counsel then explained an additional term of Walford's counteroffer:

> ADVISORY COUNSEL:  Mr. Walford, when you authorized me to present a counter-offer to the state there are two additional things that we talked about, right?  One, that *you wanted to reserve your ability to appeal decisions or things that had happened prior to today*; is that correct?

---

[2] An *Alford* plea allows a criminal defendant to enter a guilty plea without an admission of guilt to obtain the benefit of a plea agreement with the state.  *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *see also Doe 136 v. Liebsch*, 872 N.W.2d 875, 879 (Minn. 2015) ("An *Alford* plea is a plea in which an individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence while not admitting guilt." (quotation omitted)).  When entering an *Alford* plea, a criminal defendant generally "acknowledge[s] on the record at the plea hearing that the evidence the [s]tate would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty."  *See Doe 136*, 872 N.W.2d at 879 (quotation omitted).  Minnesota formally adopted the use of *Alford* pleas in *State v. Goulette*, 258 N.W.2d 758, 760 (Minn. 1977).

WALFORD:  Correct.

ADVISORY COUNSEL:  And I told you that both the judge and [the prosecutor] from the state, that it's neither of their intentions to prohibit that; is that correct?

WALFORD:  Yes, ma'am.

ADVISORY COUNSEL:  And you talked to me about what is called a *Lothenbach* plea; is that right?

WALFORD:  Yes.

ADVISORY COUNSEL:  And I told you in this particular case that that wasn't the appropriate kind of a thing because there wasn't one particular what I call dispositive issue; is that right?

WALFORD:  Yes, ma'am.

ADVISORY COUNSEL:  And I explained to you what dispositive meant?

WALFORD:  Yes, ma'am.

ADVISORY COUNSEL:  And you agree with me that based on that, that the *Lothenbach* wasn't the way to go; is that right?

WALFORD:  Yes, ma'am.

(Emphasis added.)  Neither the state nor the district court objected to these terms.

The district court accepted Walford's guilty plea to each of the two charges and sentenced him to 39 months in prison for each count, to be served concurrently with the sentence he was already serving.  Walford did not directly appeal his convictions.

*Petition for Postconviction Relief*

On August 23, 2022, Walford filed a petition for postconviction relief seeking to withdraw his guilty pleas.  In the petition, Walford argued that: (1) his convictions violated

6

due process because he was not competent to plead guilty; (2) his guilty pleas were unintelligent and therefore invalid because he did not understand that he was waiving his right to appeal pretrial issues by pleading guilty, due to misadvice by advisory counsel; (3) his guilty plea for terroristic threats was invalid because it did not address an essential element of the offense.

The postconviction court held an evidentiary hearing on the petition. Walford testified, in relevant part, that he entered his *Alford* pleas with the intention of preserving his right to appeal pretrial issues, including issues related to his right to a speedy trial and alleged discovery violations. Walford also testified that he understood that he would be able to appeal those issues based on the advice of his advisory counsel. When asked whether he recalled any discussion of a "stipulated-facts trial or a stipulated-evidence trial as an alternative to preserve [his] pretrial issues for appeal," Walford stated: "I don't remember anything like that." Walford testified that, if he had known that he would lose his right to appeal pretrial issues by entering *Alford* pleas, he would not have pleaded guilty and would have instead proceeded to trial.

On March 16, 2023, the postconviction court denied Walford's petition for postconviction relief. The postconviction court concluded that Walford was not entitled to postconviction relief because: (1) the district court did not violate due process in determining that he was competent to enter guilty pleas; (2) his guilty pleas were intelligent because his "*Alford* pleas—with the specific retention of his right to appeal, [were]

7

effectively a trial on stipulated evidence"; and (3) Walford's *Alford* plea to terroristic threats was valid.

Walford appeals.

## DECISION

Walford challenges the postconviction court's denial of his petition for postconviction relief on several grounds. A person who is convicted of a crime may petition for postconviction relief under Minnesota Statutes section 590.01, subdivision 1 (2022). *Petersen v. State*, 937 N.W.2d 136, 139 (Minn. 2019). When a person files a postconviction petition under section 590.01, subdivision 1, the district court must "hold an evidentiary hearing and make findings of fact and conclusions of law unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." *Id.* (quotation omitted).

We review a postconviction court's denial of postconviction relief for an abuse of discretion. *Sanchez v. State*, 890 N.W.2d 716, 719-20 (2017). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* at 720 (quotation omitted). We review legal issues de novo and factual findings for clear error. *Id.* We will not disturb a postconviction court's findings if there is sufficient evidence in the record to sustain them. *See Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017).

On appeal, Walford argues that the postconviction court abused its discretion by denying his petition for postconviction relief because his guilty pleas were constitutionally invalid. Walford contends that his guilty pleas were invalid because: (1) his guilty pleas

8

were unintelligent due to the misadvice of advisory counsel; (2) he was denied effective assistance of advisory counsel; and (3) the district court's competency proceedings violated due process.

We begin and end our analysis with Walford's first argument—that his guilty pleas were not intelligently entered—because that argument is dispositive. We first address the standard of review applicable to this specific issue, which the parties dispute, and then we consider the merits of Walford's plea-withdrawal argument.

## I. Because the record shows that Walford entered *Alford* pleas, the standard of review for the denial of a request to withdraw a guilty plea applies.

While we review a district court's denial of a postconviction petition for an abuse of discretion, the validity of a guilty plea presents a legal issue that we review de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). This includes whether the guilty plea was intelligently entered. *See id.* The state argues, however, that we should not review the validity of Walford's guilty plea de novo. Instead, the state asserts that we should apply the plain-error standard of review.

The state's argument is premised on its view that Walford did not enter *Alford* pleas but instead participated in a stipulated-evidence trial under rule 26.01, subdivision 3, as found by the postconviction court. Rule 26.01, subdivision 3, provides a procedure whereby "[t]he defendant and the prosecutor may agree that a determination of the defendant's guilt . . . may be submitted to and tried by the [district] court based entirely on stipulated facts, stipulated evidence, or both." Minn. R. Crim. P. 26.01, subd. 3(a). Under the rule, a criminal defendant waives all trial-related rights, stipulates to the facts or

9

evidence, and acknowledges that the court may enter a finding of guilt based on that evidence. *Id.*, subd. 3(a)-(b). After consideration of the stipulated facts or evidence, the district court may determine the defendant's guilt. *Id.*, subds. 2, 4(h). And, if the court finds the defendant guilty, the defendant may appeal from the judgment of conviction and raise issues on appeal as from any trial to the court. *Id.*, subd. 3(f).

To support its argument that Walford did not plead guilty to the charges and instead proceeded under rule 26.01, subdivision 3, the state relies on *State v. Myhre*, 875 N.W.2d 799 (Minn. 2016).[3] In that case, Myhre argued that his conviction was invalid because the district court did not strictly comply with the procedures set forth in rule 26.01, subdivision 4. *Id.* at 803. Because Myhre did not challenge the alleged rule violations in district court, the supreme court concluded that the plain-error analysis was "the proper framework" for reviewing Myhre's conviction. *Id.* at 804.

The state's reliance on *Myhre* is misguided. In *Myhre*, the record reflected the parties' intent to proceed under rule 26.01, subdivision 4. *Id.* at 802. Here, by contrast, the record shows that the parties understood that Walford entered guilty pleas for each offense via an *Alford* plea. And, notwithstanding the postconviction court's finding to the contrary, the record is clear that Walford was *not* proceeding under rule 26.01, subdivision 3; rule 26.01, subdivision 4; or *Lothenbach*. *See State v. Lothenbach*,

---

[3] The state argues that *Myhre* applies to the postconviction court's decision under rule 26.01, *subdivision 3*, even though the supreme court decided *Myhre* under rule 26.01, *subdivision 4*. *See* 875 N.W.2d at 802. For purposes of this appeal, we assume without deciding that *Myhre* applies to proceedings under rule 26.01, subdivision 3, in the same manner as it applies to proceedings under rule 26.01, subdivision 4.

296 N.W.2d 854, 857 (Minn. 1980) (describing a procedure by which a criminal defendant enters a not-guilty plea, waives his right to a jury trial, and stipulates to the state's evidence to obtain appellate review of pretrial issues); *see also Myhre*, 875 N.W.2d at 802 (explaining that rule 26.01, subdivision 4, "replaced *Lothenbach* as the method for preserving a dispositive pretrial issue for appellate review in a criminal case"). At the postconviction hearing, Walford testified that he did not remember discussing the possibility "of doing a stipulated-facts trial or a stipulated-evidence trial as an alternative" to pleading guilty. And the record from the plea hearing reflects that the parties did not stipulate to the facts or evidence, as required under rule 26.01, subdivision 3. Moreover, the district court did not make a finding of guilt based on the facts or evidence, as required by the rule; rather the district court accepted Walford's guilty pleas. Lastly, Walford confirmed during both the plea hearing and the postconviction hearing that he did *not* intend to enter a *Lothenbach* plea because he (mistakenly) believed that an *Alford* plea was the proper way to preserve pretrial issues for appeal.

In sum, the state's comparison to *Myhre* is unavailing because the parties here did not proceed under rule 26.01, subdivision 3, or rule 26.01, subdivision 4. *See* 875 N.W.2d at 804. Rather, Walford entered an *Alford* plea to each of the two offenses. The postconviction court abused its discretion when it found otherwise. Accordingly, we review de novo the postconviction court's denial of Walford's request to withdraw his *Alford* pleas on the ground that his pleas were unintelligent. *See Raleigh*, 778 N.W.2d at 94.

**II.** **The postconviction court abused its discretion by denying Walford's request to withdraw his *Alford* pleas because these pleas were not intelligently entered.**

We next consider whether the postconviction court abused its discretion by denying Walford's request to withdraw his *Alford* pleas on the basis that they were not intelligently entered. A criminal defendant does not have an absolute right to withdraw a guilty plea after it is entered. *Id.* at 93. But a defendant may seek to withdraw a guilty plea at any time when "withdrawal is necessary to correct a manifest injustice." *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004) (quoting Minn. R. Crim. P. 15.05, subd. 1). "A manifest injustice exists if a guilty plea is not valid." *Raleigh*, 778 N.W.2d at 94. "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Id.* The defendant bears the burden of proving that his guilty plea was invalid. *Id.*

The intelligence requirement ensures "that the defendant understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). One effect of a valid guilty plea is the "waiver of all non-jurisdictional defects arising prior to the entry of the plea." *See State v. Ford*, 397 N.W.2d 875, 878 (Minn. 1986). Issues pertaining to discovery disputes and a defendant's right to a speedy trial are non-jurisdictional pretrial issues. *See Dikken v. State*, 896 N.W.2d 873, 878 (Minn. 2017) (rejecting an argument that would allow a defendant to challenge "any allegedly erroneous procedural or evidentiary ruling" because it undermined "the rule that only jurisdictional challenges may be entertained after a" guilty plea); *State v. Smith*, 749 N.W.2d 88, 97 (Minn. App. 2008) ("[W]hen [appellant]

12

pleaded guilty, his speedy-trial right evaporated, and any delay up to that time was nullified by his plea.").

As discussed above, Walford argues that his *Alford* pleas were unintelligent because he "was induced to enter [these pleas] based on inaccurate advice from advisory counsel and the prosecutor that he could challenge non-jurisdictional speedy trial and discovery issues following his pleas."[4] In other words, Walford contends that his *Alford* pleas were unintelligent because he did not understand the rights he was giving up by pleading guilty. We agree.

The record reflects that Walford did not understand that he would be waiving his right to appeal non-jurisdictional pretrial issues by entering his *Alford* pleas. *See Ford*, 397 N.W.2d at 878. During his many pretrial hearings, Walford repeatedly expressed his desire to preserve his right to appeal. Walford also entered his *Alford* pleas on the express condition that he "reserve [his] ability to appeal decisions or things that had happened prior to [the plea]." And Walford testified at his postconviction hearing that he believed he could "appeal pretrial issues on an *Alford* plea" and that he would not have pleaded guilty if he had known that were not true. Taken together, these facts show that Walford did not understand that he was waiving his right to appeal non-jurisdictional pretrial issues when he entered his *Alford* pleas. We therefore conclude that Walford's *Alford* pleas were not intelligent and that the postconviction court abused its discretion by declining his request

---

[4] Applying the plain-error standard of review articulated in *Myhre*, the state contends that any misinformation from advisory counsel did not affect Walford's substantial rights, did not prejudice Walford, and does not entitle Walford to reversal. Because we conclude that plain-error review does not apply here, we do not consider these arguments.

13

to withdraw these pleas. *See id.*; *Raleigh*, 778 N.W.2d at 93.[5]  Accordingly, we reverse and remand to allow Walford to withdraw his *Alford* pleas.

> **Reversed and remanded.**

---

[5] At oral argument, the state appeared to contend that Walford deliberately delayed court proceedings and disrespected the district court and that this behavior, coupled with Walford's history of appealing his criminal convictions, indicates that Walford was manipulating the judicial process to secure reversal on appeal.  The state's argument is not properly before us because it was raised for the first time at oral argument. *See In re Disciplinary Action Against Stoneburner*, 882 N.W.2d 200, 203 n.3 (Minn. 2016) (declining to address an argument that was raised for the first time at oral argument). Regardless, the record refutes this argument.  We also note that even the most difficult defendants have constitutional rights, and those rights must be upheld.